HENRY GOBET *v.* MUNICIPALITY NO. ONE AND CITY OF NEW ORLEANS.

Where the violation of a contract is passive, the putting in default is a prerequisite to the recovery of damages.

A violation is said to be passive, by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated, or implied from the nature of the contract.

It is a sufficient bar to an action for recovery of damages for the passive violation of a contract, that the defendant was not put in default by the plaintiff previous to the expiration of the time within which the plaintiff stipulated to perform his part of the contract.

Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach, in the absence of any fraud or bad faith, are the amount of the loss he has sustained and the profits of which he has been deprived; and only for such damages as may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. Damages for supposed profits based on the speculative opinions of witnesses, are clearly inadmissable.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J. *Roselius* and *Buisson,* for plaintiff. *Livingston,* City Attorney, for defendant and appellant.

VOORHIES, J. This is an action for the recovery of damages for the breach of a contract. The plaintiff alleges in substance, that he and one *Victor Amiel* stipulated, *in solido,* by authentic act, dated the 24th of July, 1847, with Municipality No. One, to build new wharves and to repair old ones; that under the contract, extensive wharves were built by them, for which they were paid; that he was prevented from executing the contract on his part, by the neglect of the defendant to furnish the necessary materials in accordance with its stipulations, whereby a larger number of workmen employed for that purpose were forced to remain idle to his great damage; that his partner having died on the 25th of October, 1847, previous to the completion of said wharves, he proceeded to do the work as the materials were furnished, and completed the same; that the wharves thus built, yielded him very little profit, if any; and as they were more costly than the others, which remained to be constructed and repaired, he expected to be remunerated for his trouble and labor by the construction of the latter; that the defendant was put in default by authentic act, dated the 26th of May, 1848; and that the contract was also violated by the defendant, by giving the same job to other persons.

The defendant pleaded the general issue.

The cause was tried by two successive juries, whose verdicts were given in favor of the plaintiff. The verdict of the first was set aside, and a new trial granted, on the ground that the defendant had not been put in delay; and in regard to the other, a similar motion, founded on the same ground, was overruled, the Judge *a quo* remarking, that "after two verdicts in the same case for plaintiff, the Supreme Court was the only power which could bestow any efficient relief to defendant, and do justice finally to his case." The defendant is appellant from a judgment rendered on this verdict.

According to the terms of the contract, the plaintiff was bound to complete the wharves on or before the 31st of October, 1847.

Where the violation of a contract is passive, it is clear that the putting in default is a prerequisite to the recovery of damages. A violation is said to be passive, by not doing what was convenanted to be done, or not doing it at the

time, or in the manner stipulated or implied from the nature of the contract. C. C. 1906, 1927, 1925. There are three different ways by which the debtor may be put in default; by the terms of the contract, by the act of the creditor, or by the operation of law. It is not pretended here that the defendant was put *in mora*, either by the terms of the contract or the operation of law. C. C. 1905.

The question then recurs, has the defendant been put in default by the act of the plaintiff? The evidence, in our opinion, is insufficient to authorize the solution of this question in the affirmative. The letter of the plaintiff of the 10th of January, 1848, written upwards of two months after the expiration of the term within which he was bound to complete the work, cannot be regarded, it appears to us, as a putting in delay; indeed, the main object of the plaintiff, it would seem from it, was to give notice to the defendant of the dissolution of his partnership by the death of his partner, on the 26th of October, 1847. It is true, his letter concludes with the following paragraph :

" Je me trouve maintenant arrêté dans mes travaux par le manque de materiaux suffisans. Il me manque pour terminer et livrer les wharves (which he describes) encore 400 rances. J'ai jusqu'à présent employé tout ce que j'ai pu faire servir, mais la quantité de rances que je demande m'est indispensable pour compléter mon travail. Je vous prie, messieurs, de vouloir bien donner les ordres pour que cela me soit livré dans le plus court délai possible, afin que tout l'espace du port ci-dessus mentionné puisse être livré au commerce sans encombre." But it was evidently not intended as a demand in writing, to put the defendant in default, for there is not a word of complaint in it that he had been retarded or prevented from completing the work by the neglect of the defendant to furnish the necessary materials. On the contrary, we think it may be fairly inferred from it, that no such interruption had previously taken place. " Je me trouve maintenant arrêté dans mes travaux," &c. This clearly excludes the idea of any previous interruption.

The next evidence on which the plaintiff relies, is a demand, by protest, on the defendant, made by the notary public, on the 26th of May, 1848. This must also be regarded as unseasonable. Even had the defendant been seasonably put in default, we doubt much, from the circumstances disclosed by the record, whether the plaintiff would have been able to execute his contract within the term stipulated. But, be this as it may, we consider it as a sufficient bar to the action, that the defendant had not been put *in mora* by the plaintiff previous to the expiration of the term within which the latter stipulated to complete said wharves. The contract was then at an end. It is besides shown, that the plaintiff has received payment for all the work which was done by him for the municipality, previous and subsequent to the 31st of October, 1847.

It is unnecessary for us to express any opinion as to the quantum of damages assessed by the jury in this case. It may be proper, however, to add, that in cases of damages arising from the inexecution of contracts, there is no discretion left to the Judge or jury. Where the object of the contract is anything but the payment of money, in the absence of any fraud or bad faith, the law lays down the rule in explicit terms, that the damages due to the creditor for its breach, are the amount of the loss he has sustained, and the profits of which he has been deprived, and only for such damages as were contemplated, or may reasonably be supposed to have entered into the contem-

GOBET
v.
1ST MUNICIPALITY

plation of the parties at the time of the contract. Damages for supposed profits, based upon the speculative opinions of witnesses, are clearly inadmissible. 3 An. 285.

It is therefore ordered and decreed, that the judgment of the court below be avoided and reversed, and that there be judgment in favor of the defendant; the plaintiff to pay the costs in both courts.